**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RB Distribution Incorporated, et al., | No. CV-23-01068-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Skyward Automotive Products LLC, et al., | |
| Defendants. | |

In this patent case related to auto engine oil filter housings, the parties agree a protective order should issue to protect confidential and proprietary information disclosed during the discovery process. But plaintiffs RB Distribution, Inc., and Dorman Products, Inc., (collectively "Dorman") believe the protective order should also include a "prosecution bar" and defendant Skyward Automotive Products, LLC, opposes including such a provision.[1] A "prosecution bar" provision would prevent certain attorneys at the same firms representing the parties here from also prosecuting patent claims for very similar technology on that party's behalf. Because Dorman has shown good cause to include a prosecution bar, its motion for entry of a protective order (Doc. 81) is granted.

I.   **Factual and Procedural Background**

On June 9, 2023, Dorman filed a complaint asserting three counts of patent infringement related to certain oil filter housings that are used as replacement parts in auto

---

[1] Defendant Ningbo Skyward Industrial Co. Ltd. is represented by the same counsel as Skyward (Docs. 28 at 2, 65 at 2), but the opposition only describes Skyward as opposing the motion. (Doc. 82 at 1.) The same analysis would apply to Ningbo if it does in fact also oppose the motion.

engines. (Doc. 1.) Skyward appeared through counsel in this court the next month. (Doc. 15.) Almost seven months later, Skyward filed its first-ever patent application "as an outgrowth of its efforts to defend itself in this case[.]" (Doc. 82 at 2.) Skyward's patent prosecution efforts, which now also include a pending continuation application filed in August 2024 that claims priority to the original application, are being conducted by one of the same firms representing it here. *See* U.S. Patent No. 12,078,090 (filed Feb. 29, 2024) (issued Aug. 14, 2024); https://patentcenter.uspto.gov/applications/18591849 (last visited Jan. 21, 2025). Attorney J. Matthew Buchanan, who signed Skyward's opposition in this court, is listed with the U.S. Patent and Trademark Office ("USPTO") as one of nineteen attorneys from MacMillan Sobanski & Todd, LLC ("MST") authorized to prosecute Skyward's application. *See Application No. 18/591,849*, USPTO, https://patentcenter.uspto.gov/applications/18591849/attorney?application= (last visited Jan. 21, 2025). So are Joseph W. Tucker and Joshua S. Higgins, who both also appear on Skyward's behalf in this court. *Id.* The other sixteen MST attorneys listed do not represent Skyward here. *Id*.

## II.     Legal Standard

In general, a patent prosecution bar is a provision added to a protective order that prevents lawyers who, through litigation, gain access to certain types of highly-confidential technical information from using that information to write patent claims. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1376 (Fed. Cir. 2010). Prosecution bars operate by segregating the lawyers litigating a patent case on behalf of a particular client from those prosecuting patent claims on that same client's behalf. *Id*. at 1379. Such a separation may be necessary in certain patent cases where, despite "even the most rigorous efforts" of an attorney to preserve confidentiality in compliance with a standard protective order, there is a risk of "inadvertent compromise" because it is difficult to un-learn or compartmentalize technical information across closely-related contexts. *Id*. Prosecution bars represent a "less drastic alternative" to disqualifying legal personnel entirely. *Applied Signal Tech., Inc. v. Emerging Mkts. Commc'ns, Inc.*, No. C-09-02180 SBA (DMR), 2011 WL 197811, at *1

(N.D. Cal. Jan. 20, 2011).

Like for any protective order, the party seeking the prosecution bar bears the burden of establishing good cause for its issuance. *Deutsche Bank*, 605 F.3d at 1378. In the patent context, the movant must meet a threshold burden of showing an "unacceptable risk of inadvertent disclosure" and that the prosecution bar is reasonably tailored to reflect that risk. *Id*. at 1379, 1381. The tailoring question turns on whether "the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar" all "reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id*. at 1381; *Applied Signal Tech.*, 2011 WL 197811, at *2.

When those showings are made, the party seeking an exemption from the bar must then show "on a counsel-by-counsel basis" that the attorney's patent-prosecution representation "does not and is not likely to implicate competitive decisionmaking," defined as activities that "involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Deutsche Bank*, 605 F.3d at 1378, 1381 (simplified).

Not all patent prosecution activities implicate competitive decisionmaking. *Id*. at 1378–79. Attorneys who report office actions, file ancillary paperwork, staff projects, or coordinate client meetings may not be competitive decisionmakers. *Id.* at 1379–80. But for those attorneys who do play a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios"—for example, by "obtaining disclosure materials for new inventions and inventions under development, . . . making strategic decisions on the type and scope of patent protection that might be available or worth pursuing" or by "writing, reviewing, or approving new applications" or "strategically amending" claim scope during a prosecution—competitive decisionmaking may be a "regular part of their representation[.]" *Id*. at 1380.

Based on this information, the court must then balance the potential injury to the non-moving party's client in restricting its choice of counsel against the potential injury to

the movant that would be caused by inadvertent use of the confidential information. *Id.*; *Applied Signal Tech.*, 2011 WL 197811, at *4. Only when the latter outweighs the former should a patent prosecution bar issue. *Deutsche Bank*, 605 F.3d at 1381; *Applied Signal Tech.*, 2011 WL 197811, at *5.

### III. Analysis

To start, Dorman has shown good cause for including the prosecution bar provisions in the protective order because there is a significant risk of inadvertent disclosure. Both sides will need to disclose highly-confidential technical information related to the oil filter housings at issue here to fully litigate this patent case. (*See* Doc. 81 at 5–10.) Skyward began prosecuting its first patent, which also concerns oil filter housings, as "a result of design-around efforts that resulted from this lawsuit." (Doc. 82 at 9; *see also* Doc. 82 at 2 (describing patent application "as an outgrowth of its efforts to defend itself in this case").) Skyward's patent prosecution for a very similar product stemming from "design-around efforts" growing out of this litigation is related closely enough to the patents-in-suit to present a substantial risk of inadvertent disclosure despite any lawyer's best efforts to keep the information segregated. *Cf. NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F. Supp. 2d 1040, 1044 (D. Ariz. 2011) (declining to issue prosecution bar where movant was also the party who initiated the patent prosecution and did so after the litigation began). That Skyward's attorneys are involved in a pending application at the exact same time they are litigating this case only adds to the risk.

Dorman has also narrowed the information that would trigger the bar to that relevant to Skyward's preparation and prosecution of patent applications. The prosecution bar here would only apply to information designated as "highly confidential information – technical," defined as that which "in the good-faith belief of [the] party and its Counsel" contains or reflects "technical information that is confidential, proprietary, commercially valuable, or sensitive in nature and capable of being used for the preparation or prosecution of a patent application dealing with such subject matter[.]" (Doc. 81-2 at 4.) Unlike financial data or business information, this type of highly-confidential technical

information "is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure." *Applied Signal Tech.*, 2011 WL 197811, at *2. And in requiring that the triggering information be capable of being used for the preparation or prosecution of patent applications, the prosecution bar provision self-imposes an exact match for relevance.

The scope of patent prosecution activities covered by the bar, duration, and covered subject matter are also appropriately narrow. The prosecution bar provision is limited to patent prosecution activity related to "technologies for adaptors for connecting oil filters and oil coolers to an engine in an automobile, including any patent applications in the family of the patents-in-suit[.]" (Doc. 81-2 at 7.) "Prosecution activity" is defined here more narrowly than in other cases that have approved prosecution bars, *see, e.g.*, *id*. at *2 n.1, by including only "drafting, editing, approving or amending [ ] patent claims or providing advice or counseling regarding the preparation of claims or amendment of claims" and exempting "activities relating to *ex parte* reexamination, *inter partes* review, covered business method review or any other post-grant review proceeding." (Doc. 81-2 at 8.) The provision also exempts activities like forwarding certain types of information to prosecuting attorneys "to assist a patent applicant in complying with its duty of candor" and lasts only during and for one year following the pendency of this action. (Doc. 81-2 at 7–8.) These provisions are equal to or narrower than those approved by courts in the past. *See id*. at *3 & n.2 (discussing cases).

Dorman having made a threshold showing that a prosecution bar is warranted, the burden now shifts to Skyward to demonstrate "on a counsel-by-counsel basis" that each attorney's pending patent-prosecution activities "do[ ] not and [are] not likely to implicate competitive decisionmaking." *Deutsche Bank*, 605 F.3d at 1381; *see also Applied Signal Tech.*, 2011 WL 197811, at * 3. Unfortunately, Skyward focused its only competitive decisionmaking arguments on a perceived lack of clarity on where the burden rests—supported by case law that declined to decide the issue—rather than on providing a factual discussion of its attorney's activities. (Doc. 82 at 9–10 (citing *Champion Power Equip. Inc.*

*v. Firman Power Equip. Inc.*, No. CV-23-2371-PHX-DWL, 2024 WL 4524187, at *3 (D. Ariz. Oct. 18, 2024).) Given *Deutsche Bank*'s command that "the party seeking an exemption from a patent prosecution bar must" make certain showings "on a counsel-by-counsel basis[,]" 605 F.3d at 1381, the safer course would have been to provide meaningful facts and arguments as to each attorney's competitive decisionmaking activities somewhere other than in a cursory footnote. (*See* Doc. 82 at 10 n.6.) Moreover, the statement in that footnote that "none of the MST attorneys who are potentially subject to the prosecution bar made any substantive arguments to the USPTO during prosecution of the '090 Patent" (Doc. 82 at 10 n.6) speaks neither to the pending application nor to the range of activities *Deutsche Bank* contemplated as constituting competitive decisionmaking *besides* "ma[king] . . . substantive arguments" in a patent prosecution, including strategic decisionmaking on the type of patent protection that might be worth pursuing or "writing, reviewing, or approving new applications." *Id.* at 1380. Skyward faults Dorman for never asking what activities its attorneys were conducting, but it had far more ready access to the information and declined to provide it to the court.

Finally, balancing the risk of injury Dorman demonstrated against Skyward's arguments in favor of maintaining counsel of its choosing supports issuing a prosecution bar here. Skyward argues the bar will "severely limit Skyward's access to its counsel of choice" (Doc. 82 at 11) but by its terms, the prosecution bar does not apply to every attorney at MST (Doc. 81-2 at 7), sixteen others of which are listed as authorized to represent Skyward in prosecuting its patents. *See Application No. 18/591,849*, USPTO, https://patentcenter.uspto.gov/applications/18591849/attorney?application= (last visited Jan. 21, 2025). MST has only represented Skyward in one patent prosecution before the pending one, the duration of its relationship as Skyward's patent-prosecution counsel is shorter than the lifespan of this litigation, and sixteen MST attorneys authorized to represent Skyward before the USPTO can still do so. If attorneys Buchanan, Tucker, and Higgins played so small a role in prosecuting Skyward's first patent that they do not feel they engaged in competitive decisionmaking (*see* Doc. 82 at 10 n.6), the bar will hardly

affect Skyward's choice of counsel at all. And it does not apply to Kenneth M. Motolenich-Salas or the MotoSalas Law firm, also representing Skyward in this court.

Dorman has shown a substantial risk of inadvertent compromise of its highly-confidential technical information and that its proposed prosecution bar is reasonably tailored to reflect that risk. The balance of that risk of injury against Skyward's right to counsel of its choosing weighs in favor of including the proposed prosecution bar in the protective order.

Accordingly,

**IT IS ORDERED** the Motion for Protective Order (Doc. 81) is **GRANTED**. The court will enter a signed copy of the protective order.

Dated this 21st day of January, 2025.

Honorable Krissa M. Lanham
United States District Judge