**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

RB Distribution Incorporated, et al.,

Plaintiffs,

v.

Skyward Automotive Products LLC, et al.,

Defendants.

No. CV-23-01068-PHX-KML

**ORDER**

Plaintiffs Dorman Products, Inc. and its wholly-owned subsidiary RB Distribution (collectively, "Dorman") sued Skyward Automotive and Ningbo Skyward Industrial Co. Ltd. (collectively, "Skyward") for infringing plaintiffs' patents by selling oil filter products allegedly "virtually identical" to theirs. (Doc. 1 at 2, 5.) The parties filed their claim construction briefs. (Docs. 114; 115; 117; 148 at 9.) Dorman does not believe a claim construction hearing is necessary and though Skyward disagrees, it intended to use such a hearing to further explain the existing record rather than introduce extrinsic evidence. (Doc. 149 at 1-2, 5.) The court will therefore construe the claims on the briefing rather than holding a hearing. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024) ("there is no procedural error in the mere fact that a court has construed claims without conducting a separate *Markman* claim-construction set of proceedings, much less without hearing extrinsic evidence or expert testimony").

**I. Legal Standard**

"[T]he claims of a patent define the invention to which the patentee is entitled the

right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). The process of claim construction, or interpreting the scope of the patent's claims, "including terms of art," is "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Courts therefore first construe the asserted claim and its scope before additional proceedings determine "whether the accused method or product infringes the asserted claim as properly construed." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).

To properly construe the claims, courts look at the claims' words, the patent specification document, and the patent's prosecution history and records. *Id.* at 1582; *see Innova/Pure Water, Inc.*, 381 F.3d at 1116. The words in a claim are interpreted to hold their "ordinary and customary meaning" from the perspective of "a person of ordinary skill in the art at the time of the invention" (a "POSITA"). *Innova/Pure Water, Inc.*, 381 F.3d at 1116, 1118.; *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). This is an objective test. *Innova/Pure Water, Inc.*, 381 F.3d at 1116. Courts also review the specification in case the inventor used terms inconsistently with their ordinary definitions, with the specification acting as a "dictionary" for terms it has defined. *Vitronics Corp.*, 90 F.3d at 1582. Using extrinsic evidence is only appropriate if these intrinsic sources do not resolve a dispute, *id.* at 1583, but dictionaries and technical treatises may be considered alongside intrinsic evidence to determine what a term ordinarily means to a POSITA. *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001).

If a disputed claim term has a plain meaning and requires no further clarification, the court need not adopt a construction for that term. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

## II. Claim Construction

Dorman generally argues the claim construction here should be "straightforward" because the asserted claims use commonly-understood words with plain meanings. (Doc. 114 at 6-7.) It proposes constructions for the terms "cast[]" and "threaded apertures" but

argues the court need not construct other terms because they have plain meanings. (Doc. 114 at 6-7.) Skyward proposes a construction for each contested term.

Dorman states, and Skyward does not contest, that the ’005 specification is representative of each asserted patent. (Doc. 114 at 11; *see* Doc. 115 at 9.)

**A. “Cast[]” as product-by-process**

| Dorman’s proposed construction | Skyward’s proposed construction |
|---|---|
| An end result/product (not a process) | A product-by-process limitation; a product made by pouring molten metal into a mold |

(Doc. 110-1 at 2.)

The patent uses the word “cast” and variants like “casting” and “casted” to describe the nature of the oil filter assembly. (*E.g.*, Doc. 114-2 at 10 (“a cast metallic part provides a robust assembly”), 11 (“What is claimed is . . . a single metallic casting”).) Dorman asks the court to construe “cast[]” as an end result or product rather than a process, while Skyward argues the casting process is integral to the product such that the product must be construed to *require* that casting process. (Docs. 114 at 14-16; 115 at 10-15.)

Some patent claims are defined wholly or in part by “the process by which [the product] is made.” *In re Thorpe*, 777 F.2d 695, 697 (Fed. Cir. 1985). These “product-by-process” claims enable applicants to claim a product that is difficult to define without speaking to the process by which it is made. *Id.*; *see SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1315 (Fed. Cir. 2006). A product-by-process claim is only infringed when the accused product was made with the same process. *Abbott Lab’ys v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009). So, to determine infringement of a product-by-process patent, it is “crucial to determine which precise processes are foreclosed by the patent in the manufacture of that product” because there is no infringement if the accused product was made by a different process. *Silicon Storage Tech., Inc. v. Xicor LLC*, 776 F. Supp. 2d 1072, 1084 (N.D. Cal. 2011).

A product is defined in part by its process “if the patentee has made clear that the

process steps are an essential part of the claimed invention." *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1038 (Fed. Cir. 2020) (simplified). This is a high bar: courts have found even multiple statements suggesting a process is "required" to be outweighed by more statements suggesting the process is merely "preferred." *Id*. (statements describing "preferred methods" and noting the preferred method "may not be required" for certain uses outweighed "a few statements" suggesting the process was required). Here, under Skyward's construction, it is unclear what process steps would be an essential part of the product. Skyward concedes the claim does not clearly describe any part of the casting process (Docs. 114 at 14; 115) and its own pleadings describe the process vaguely. (Doc. 115 at 15 (calling it a "metal-related process, like casting").) Dorman's descriptions of the structure do imply the product was created through a casting process (*see* Doc. 114-2 at 11 (describing a "single metallic casting")), but they focus on the cast structure itself without including detail about the process's steps. Dorman does not even indicate a specific material must be involved, stating only that the casting is "preferably aluminum." (Doc. 114-2 at 10-11.) Dorman's patents do not contain enough process details for a third-party manufacturer to "determine what processes it can employ to produce a non-infringing product," which would be required for a product-by-process claim. *Silicon Storage Tech., Inc.*, 776 F. Supp. 2d 1072.

Both parties cite a case which upheld a finding that "cast in one piece" is a product-by-process claim element. *Kamstrup A/S v. Axioma Metering UAB*, 43 F. 4th 1374, 1382 (Fed. Cir. 2022). In that case, the claim's specification language described the product's fabrication process in detail (for instance, "being cast in one piece," "cast in a single step," and "fabricated with a reduced number of steps" compared to other products), and did not describe the product's structure itself. *Id*. In contrast, Dorman does not describe the casting process taking place in any "particular way" or using a certain number of steps. *Cf. id*. Instead, it describes the product's structure in detail—for instance, as a single metallic product with an oil filter housing at one end, an oil lubrication network at the other, and an enclosed flow path. (Doc. 114-2 at 11.) Although Dorman describes its product as a "single

casted part" as opposed to a "collection of parts" (*see* Doc. 115-7 at 10), its focus is on the casting's structure. *See Vectura Ltd.*, 981 F.3d at 1037 (finding no product-by-process claim, though claim referred to process, because focus was on structure itself).

Skyward cites dictionaries and Dorman's expert opinion to argue any product referred to as a "cast" necessarily imports the casting process into its definition. (*See* Doc. 115 at 13-15.) But the unrebutted expert opinion found a POSITA would understand "cast" to refer to a finished product rather than the result of a specific manufacturing process. (Doc. 115 at 15.) And Dorman rightly points out Skyward's logic could apply to a multitude of terms which imply a product was created by some process. (Doc. 117 at 11 ("product" is usually something produced via industrial process).)

For these reasons, the court construes "cast[]" as the end product. However, the specification makes clear the cast must be metallic (Doc. 114-2 at 11 (discussing "metallic" cast to contrast plastic prior art)). *DS Advanced Enters., Ltd. v. Lowe's Home Centers, LLC*, No. 3:23-CV-01335-CAB-JLB, 2024 WL 4361620, at *2 (S.D. Cal. Sept. 30, 2024) ("The plain language of the claim limitation 'metal housing (108)' unambiguously requires that this housing element of the apparatus be comprised of metal.")

"Cast[]" is therefore construed as "a metallic end result/product (not a process)."

**B. "Threaded apertures" and variants**

| Dorman's proposed construction | Skyward's proposed construction |
| --- | --- |
| Apertures with threading | Apertures with threads formed by a casting process |

(Doc. 110-1 at 6.)

The patent describes "at least one threaded aperture" formed in the casting which is intended to receive and attach additional components including an oil cooler. (Doc. 114-2 at 11-12.) Skyward concedes its proposed construction would "flow from the construction of 'cast[]'"—namely, if "casting" is a product-by-process limitation, the threaded apertures must be made during a casting process. (Doc. 115 at 16). It offers no other separate argument to support its proposal, and the court has rejected its product-by-process limiting

construction of "cast[]." Accordingly, the court construes "threaded apertures" as "apertures with threading" consistent with Dorman's proposed construction. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue") (simplified).

**C. "Lower surface," "lower surface configured to mate with," "upper surface," and "upper surface configured to mate with"**

| Dorman's proposed construction | Skyward's proposed construction |
|---|---|
| No construction necessary | "Upper surface configured to mate with," in its various forms, and "lower surface configured to mate with," in its various forms, are means-plus-function elements under 35 U.S.C. §112(f) (rendering "lower surface configured to mate with," in its various forms, indefinite).[1] |

(Doc. 115 at 17.)

The patent describes the casting as having a "lower surface" which mates with engine oil flow paths, and an "upper surface" which contains threaded apertures and is configured to attach to an oil cooler. (Doc. 114-2 at 10-12.) Skyward proposes that "upper surface" and "lower surface," and their variants, should be construed as means-plus-function elements. (Doc. 115 at 17.)

"An element in a claim for a combination may be expressed as a means or step for performing a specified function" without describing its structure or material. 35 U.S.C. §112(f). These means-plus-function claims are construed to cover the corresponding structure, material, or acts described in the specification. *Id.* Patentees typically follow a

---

[1] Skyward's proposed constructions for these terms in the joint claim construction statement differed slightly according to term and patent number (Doc. 110-1 at 15), but the court will analyze the construction Skyward puts forward in its briefing (Doc. 115 at 17).

particular format for means-plus-function terms, using the word "means" and describing the relevant function rather than the structure that provides the function. *Phillips v. AWH Corp*., 415 F.3d 1303, 1311 (Fed. Cir. 2005). The absence of the word "means" "creates a rebuttable presumption" that the term is not subject to a means-plus-function limitation. *Id*. (finding no means-plus-function limitation even where claim refers to "means" because term refers to physical apparatus rather than "a general description of any structure that will perform a particular function").

The relevant terms here describe lower and upper surfaces of the casting that sit between its first and second end and are configured to mate with an engine's oil lubrication network and an oil cooler, respectively. (Docs. 114-2 at 11; 115 at 17.) Dorman argues these terms describe "the relationship between the claimed surfaces and the claimed adaptor's other features," focusing on the part's overall structure. (Doc. 117 at 13.) Skyward argues the terms "lower surface" and "upper surface" are generic terms with no structural meaning, so because the specification does not provide structural requirements for those surfaces, they must be defined by their functional language "to configure with." (Doc. 115 at 18-19 (also pointing out the specification's figures do not show the lower surface).)

Skyward acknowledges the claim does not use "means" language (Doc. 115 at 7, 17), so there is a presumption against a means-plus-function construction. *Phillips*, 415 F.3d at 1311. And because means-plus-function limitations are appropriate only where terms "do not connote sufficiently definite structure," that presumption is strengthened by the specification's structural descriptions of these terms. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015). Namely, Dorman states the lower surface "has a wholly internal fluid flow path" and "is configured to mate with" the engine, while the upper surface of the cast metallic body is configured to mate with an oil cooler. (Doc. 114-2 at 11, 25.) The specification also establishes where these surfaces are positioned, with an image showing the upper surface (Doc. 115 at 20) and descriptions of the surfaces' positions on the casting's elongated body between the first and second end (Doc. 114-2 at

11). Even Skyward describes the surfaces in structural terms. (Docs. 115 at 21-21 ("upper surface" includes "multiple circular tabs [with] a flat, uninterrupted surface that lacks an aperture, and a recessed area for mating with an oil cooler"); 114 at 25-26 (compiling evidence of Skyward's contentions stating the product "includes a body having a lower surface [and] an upper surface").)

By stating the surfaces must be "configured" to mate with other parts, the specification does describe their function. But courts find the word "configured" to give rise to a means-plus-function limitation where the patentee has *exclusively* described the term according to that function. *See Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1006 (Fed. Cir. 2021) (finding "module configured to control access" term "does not provide any indication of structure," only the function it is configured for). In contrast, here, even the function is described structurally—the *structure* of the surfaces must be built to mate with certain other parts. The patent describes a known physical apparatus rather than suggesting any structure could fulfill the function of mating with the engine and oil cooler. *Phillips*, 415 F.3d at 1311. The terms therefore describe the physical structure in sufficient detail to avoid the means-plus-function limitation. *Cf. Williamson*, 792 F.2d at 1351 (finding "distributed learning control module" term, without any structural description, connotes only function). A POSITA would understand the terms used to describe where the surfaces are positioned on the casting, where they are oriented in relation to each other, where the mating apparatus is located, and how they must be built in comparison with other parts. (Doc. 114-2 at 10-11.)

"Upper" and "lower" surfaces have a clear ordinary meaning. Because their interpretation "involves little more than the application of the widely accepted meaning of commonly understood words," *Phillips*, 415 F.3d at 1314, these terms require no construction.

/

/

/

**D. "First end"**

| Dorman's proposed construction | Skyward's proposed construction |
|---|---|
| No construction necessary | Terminal surface at the boundary of the referenced element |

(Doc. 110-1 at 15.)

Dorman uses "first end" (and "second end" (Doc. 114-2 at 11)) to describe where certain features are located and how they are angled. (*See* Doc. 114-2 at 11 ("an oil filter housing is defined at a first end of the elongated body").) Skyward proposes a construction that refers to a specific point—the "terminal surface at the boundary" of the element. (Doc. 115 at 21.) But it does not rebut Dorman's observation that "first end" does not indicate any "precise end point" such that the terminal surface at the boundary of the element would be an accurate construction. (Docs. 114 at 29; 115 at 21-22.) Like the shallow and deep ends of a pool, "first end" appears to generally indicate the area in which another element is located as opposed to only its terminal surface, using terms with widely-understood meanings. *Id*. It therefore requires no construction.

**E. "Flow path"**

| Dorman's proposed construction | Skyward's proposed construction |
|---|---|
| No construction necessary | A linear flow path having no angular component and that is completely enclosed. This term should be limited to the structure of flow path 150, illustrated in FIG. 5, which is the only structure described and illustrated for the flow path element |

(Doc. 110-1 at 17.)

The patent's claims section describes the flow path as "symmetric about a longitudinal access," "enclosed" and "wholly within the elongated body," and "substantially linear." (Doc. 114-2 at 11.) It is positioned between the first and second ends

of the elongated body. (Doc. 114-2 at 11.) However, the specification describes the flow path as "linear" and having "no angular component." (Doc. 114-2 at 11.) This construction is governed by the "substantially linear" language in the claims rather than the "linear" language in the specification because "claims are not to be interpreted by adding limitations appearing only in the specification." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994); *see Laitram Corp. v. NEC Corp*., 163 F.3d 1342, 1347 (Fed. Cir. 1998) (it is a "well-established principle that a court may not import limitations from the written description into the claims"). As Dorman argues, the path only being *substantially* linear leaves room for the potential of an angular component, meaning Skyward's construction could be incomplete. (Doc. 114 at 33.) And the court cannot choose between the differing descriptions to decide what Dorman intended. *Wyeth v. Anchen Pharms*., No. SACV 06-386JVS(MLGX), 2007 WL 6548861, at *7 (C.D. Cal. Dec. 20, 2007) (if "no exact definition emerges from the specification, the court is not free to select arbitrarily between differing descriptions in deciding which one the patentee really "intended" to define his or her invention").

Skyward attempts to limit the term "flow path" to only the non-angular, completely-enclosed flow path shown as item 150 in FIG. 5. (Doc. 115 at 22-23.) But the patent's claims section appears to refer to flow paths more generally, describing a surface of the casting that "is configured to mate with oil flow paths within an engine." (Doc. 114-2 at 11.) Skyward's construction is therefore not appropriate. A "flow path" is not a confusing phrase; its ordinary meaning, and proper construction, is "a path by which things flow."

**F. "Assembly"**

| Dorman's proposed construction | Skyward's proposed construction |
|---|---|
| No construction necessary; not a limiting term | A limiting preamble term; a collection of parts |

(Doc. 110-2 at 26.)

In Claim 6's preamble, Dorman claims "[a]n oil filtering assembly for an engine,

the assembly comprising[] a single metallic casting" with multiple components described in the claim. (Doc. 114-2 at 11.) Claim 5's preamble is similar (Doc. 114-2 at 11) and the specification's description of the figures also discusses the image of the adaptor "prior to assembly of any related components" (Doc. 114-2 at 10). "[A]s a general rule preamble language is not treated as limiting." *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1354 (Fed. Cir. 2020). It is limiting only where it recites essential structure or steps, or is necessary to give the claim meaning. *Id.* at 1354-55. Preamble language that describes "benefits or features" of the claimed invention does not limit the claim's scope. *Id.* at 1355 (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002)).

Skyward seeks to construe the patent's usage of "assembly" in the preamble as limiting the word's interpretation in the claims section. The phrases Dorman used in the preamble imply the assembly is a single body with multiple parts. That is consistent with the plain and ordinary meaning of "assembly," i.e., a collection of parts or multiple components made into a whole. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, No. SA CV 03-110GLTANX, 2005 WL 5239257, at *3 (C.D. Cal. Apr. 11, 2005). Skyward's suggested limitation—"a collection of parts"—appears to be the same as the word's plain and ordinary meaning (Doc. 115 at 23-25). *See id.*

Regardless, Skyward has not shown "assembly" describes an essential structure such that the preamble language is limiting. The claim describes multiple parts that comprise the "assembly" (*see* Doc. 114-2 at 11), and the word "assembly" is not necessary for a reader to understand the structure has multiple parts. Additionally, the preamble for Claim 5 describes "an adaptor . . . in an assembly with an engine," using "assembly" to describe the adaptor's use rather than to describe essential steps (Doc. 114-2 at 11). *See Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787-JEM, 2015 WL 12655593, at *4-*5 (C.D. Cal. Aug. 27, 2015) ("spillproof drinking assembly" not a limiting preamble term because "claim body describes a structurally complete invention and uses a preamble as a statement of intended use or to provide context").

"Assembly" therefore needs no construction beyond its plain and ordinary meaning, which is a collection of multiple components made into a whole.

**III. Conclusion**

The contested terms shall be construed according to the above.

Accordingly,

**IT IS ORDERED** the contested terms be construed according to the above.

Dated this 11th day of August, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**